Filed 7/25/13  P. v. Nash CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H037740 |
| Plaintiff and Respondent, | (Santa Cruz County Super. Ct. No. F18291) |
| v. | |
| RICHARD NELSON NASH, | |
| Defendant and Appellant. | |

A jury convicted defendant Richard Nelson Nash of possession of child pornography (Pen. Code, § 311.11, subd. (a)), and possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)).[1]  During trial, defendant admitted the allegations that he had suffered five prior violent or serious felony "strike" convictions. In December 2011, the court sentenced him to two indeterminate terms of 25 years to life in prison to be served concurrently.  During sentencing, the court awarded a total of 82 days of presentence credits (61 days of custody credits and 21 days of conduct credits).

On appeal, defendant contends that he is entitled to 41 days of additional conduct credits under the latest amendment to section 4019, effective October 1, 2011 (the October 2011 amendment).  He argues that as a matter of statutory interpretation, the October 2011 amendment must be applied retroactively.  He contends further that

_____

[1] Further statutory references are to the Penal Code unless otherwise stated.

prospective application of the October 2011 amendment violates his constitutional right to equal protection of the law. Lastly, he contends that, even if the October 2011 amendment is found not to apply to his circumstances, the court erred in calculating his presentence credits and he is entitled to 63 days of custody credits and 30 days of conduct credits.

We conclude that defendant's claim of entitlement to additional conduct credits under the October 2011 amendment to section 4019 is without merit. Last year, in *People v. Kennedy* (2012) 209 Cal.App.4th 385 (*Kennedy*), we rejected statutory interpretation and equal protection arguments identical to those raised by defendant here. We agree, however, that the court erred in its calculation of presentence credits. Accordingly, we will order the judgment modified to award the proper presentence credits, will direct the clerk of the superior court to modify the abstract of judgment and transmit a certified copy thereof to the Department of Corrections and Rehabilitation, and will affirm the judgment as modified.

## FACTS[2]

Defendant was placed on probation in February 2009 after failing to register as a sex offender. The probation officer assigned to him was Santa Cruz Probation Officer Linda Perez. In May 2009, defendant was fitted with a GPS monitoring device because he was classified by the Static-99 risk assessment tool as high-risk for violent sex offenses. After Officer Perez noted from monitoring him that defendant frequented the Watsonville Public Library on three successive days, she went to the library in late May. She observed defendant viewing on a public computer various images of young girls between the ages of five and nine; she saw him "zoom in to what was the groin area of

---

[2] We present an abbreviated discussion of the facts underlying the convictions because they are not germane to the claims of error on appeal.

the girl[s]." According to GPS data, defendant continued to frequent Santa Cruz County public libraries in June and July 2009.

On July 27, 2009, Officer Perez and another probation officer conducted a probation search at the Santa Cruz residence hotel where defendant was staying. As they entered the room, defendant went over to one side of the bed and tried to cover a laptop computer with a blanket. He said he had recently purchased the laptop after previously purchasing a desktop computer—which was unplugged and on the floor in the hotel room—that he was unable to make operable. Officer Perez examined the computer, determined that it was booted up, and viewed some of the Web sites recently visited. She was concerned because some of the sites that had been visited, including sites using the term "Lolita," were ones associated with child pornography. Officer Perez seized the computer for further examination, advising defendant that he could come to her office that afternoon to retrieve the computer.

During her preliminary examination of the laptop at the office, she determined that among the images that were viewed on the computer were those of young girls (between the ages of five and nine) having sexual intercourse with adult men. Officer Perez then stopped her search and contacted the Santa Cruz Police Department, where she later delivered the laptop for further investigation.[3]

---

[3] Santa Cruz Police Detective Mark Eveleth, who testified that he had received over 400 hours of training in computer forensics, performed a search of defendant's laptop computer. He did a "forensic preview" of the computer before the arrest of defendant and determined that "it was obvious . . . that there was child pornography in there. . ." After defendant's arrest, Detective Eveleth performed a more detailed forensic examination of the laptop computer's contents and found over one hundred images of child pornography. Detective Eveleth also determined that several Web sites had been accessed between July 24 and July 27, 2009; on each of those sites, it was specifically stated that the sites offered child pornography illegal in most countries.

When Officer Perez returned to her office, defendant was in the waiting area. While she was meeting with defendant in her office, two Santa Cruz Police detectives, Mark Eveleth and Katrina Rogers, arrived. The detectives placed defendant under arrest for possession of child pornography. They conducted a search of a backpack in defendant's possession incident to his arrest and discovered a usable quantity (.15 grams) of methamphetamine.

PROCEDURAL BACKGROUND

Defendant was charged with two felonies in an information filed October 14, 2009, i.e., possession of child pornography (§ 311.11, subd. (a)), and possession of a controlled substance, methamphetamine (Health & Saf. Code, § 11377, subd. (a)). It was also alleged as enhancements that defendant had suffered six prior violent or serious felonies, i.e., strikes (§§ 667, subds. (b) – (i); 1170.12), namely, five counts of forcible lewd act upon a child (§ 288, subd. (b)(1), and kidnapping of a child (§ 207, subd. (b)). The case proceeded to jury trial on October 4, 2011. After a seven-day trial, defendant was convicted of both counts. Defendant admitted the allegations that he had previously been convicted of six strike offenses.

Defendant filed a motion to strike the enhancements under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497. On December 14, 2011, the court denied defendant's *Romero* motion, and sentenced him to two concurrent terms of 25 years to life in prison. The court awarded defendant 61 days of custody credits and 21 days of conduct credits for a total of 82 days of presentence credits. Defendant filed a timely notice of appeal.

DISCUSSION

I.      *Claim of Additional Conduct Credits Under Section 4019*

        A.      *Summary of Contentions*

Defendant contends that the October 2011 amendment to section 4019 applies to his case. As discussed in greater detail below, he argues that under both statutory

4

construction and equal protection analyses, he is entitled to the benefit of the more favorable calculation of presentence conduct credits under the October 2011 amendment. Specifically, he contends that he is entitled to the more favorable calculation of conduct credits for all days he spent in custody from October 1, 2011, until his sentencing on December 14, 2011.

In the event his argument concerning the applicability of the October 2011 amendment to section 4019 fails, defendant contends that the court erred in its calculation of presentence credits, in that it awarded 61 days of custody credits (instead of 63) and 21 days of conduct credits (instead of 30).

The Attorney General responds that defendant's claims are barred because he failed to initially raise any errors in the calculation of presentence credits in the trial court as required by section 1237.1. She asserts alternatively that even if defendant's contentions regarding the applicability of the October 2011 amendment to section 4019 are cognizable, they lack merit.

B.    *Applicability of Section 1237.1*

We initially reject the Attorney General's assertion that section 1237.1 bars defendant's claims. Section 1237.1 provides: "No appeal shall be taken by the defendant from a judgment of conviction on the ground of an error in the calculation of presentence custody credits, unless the defendant first presents the claim in the trial court at the time of sentencing, or if the error is not discovered until after sentencing, the defendant first makes a motion for correction of the record in the trial court."

Defendant's constitutional and statutory challenges are not ones involving claimed error in the calculation of credits under the operative version of section 4019. (See *People v. Verba* (2012) 210 Cal.App.4th 991, 994 (*Verba*) [rejecting assertion that section 1237.1 barred defendant's claim that under equal protection principles he was entitled to application of October 2011 amendment of section 4019].) As explained recently by the Fifth District Court of Appeal in rejecting the Attorney General's

5

contention that section 1237.1 barred the defendant's claim that a different version of section 4019 applied in determining the custody credits to which he was entitled: "[A]n error in 'doing the math' . . . constitutes the type of minor sentencing error at which section 1237.1 was clearly aimed. A determination of which version of a statute applies—especially when, as here, that determination involves application of constitutional principles—does not." (*People v. Delgado* (2012) 210 Cal.App.4th 761, 766.)

Further, defendant's alternative claim of error is clearly one that involves an alleged error in calculation of presentence credits, and section 1237.1 would ordinarily require the initial assertion of such claim at the trial level. But we will consider it here "in the interests of economy" because there are other issues raised in the appeal, namely, defendant's claim that he is entitled to the benefit of the more favorable calculation of custody credits under the October 2011 amendment of 4019. (*People v. Jones* (2000) 82 Cal.App.4th 485, 493; see also *People v. Acosta* (1996) 48 Cal.App.4th 411, 427-428.)

C.   *Background Concerning Section 4019*

Section 4019 permits a criminal defendant to earn additional credit prior to being sentenced by performing assigned labor (§ 4019, subd. (b)(1)) or by his or her good behavior during detention (§ 4019, subd. (c)(1)). Such credits are collectively referred to as "conduct credits." (*People v. Dieck* (2009) 46 Cal.4th 934, 939, fn. 3.) "The very purpose of conduct credits is to foster constructive behavior in prison by reducing punishment." (*People v. Lara* (2012) 54 Cal.4th 896, 906 (*Lara*).) Section 4019 has undergone a series of revisions since 2009. (See generally *People v. Garcia* (2012) 209 Cal.App.4th 530, 535-540.)

Senate Bill No. 18 (2009-2010 3d Ex. Sess.), enacted in October 2009, amended section 4019, effective January 25, 2010, to enhance the number of presentence conduct credits for certain offenders. (Stats. 2009, 3d Ex. Sess., ch. 28, § 50, p. 4427; the January 2010 amendment.) Under the pre-January 2010 formula for calculating credits under

6

section 4019, a defendant could accrue conduct credit of two days for every four days of actual presentence custody. (Stats. 1982, ch. 1234, § 7, p. 4554 [former § 4019, subd. (f).) Under the January 2010 amendment, a qualifying defendant—persons other than those required to register as sex offenders, or those being committed to prison for, or who had suffered prior convictions of, serious felonies as defined in section 1192.7 or violent felonies as defined in section 667.5—could accrue conduct credit of two days for every two days of presentence custody, twice the previous rate. (Stats. 2009-2010, 3d Ex. Sess., ch. 28, §§ 50, 62 [Pen.Code, former § 4019, subds. (b), (c), & (f)].)

The statute was again amended by Senate Bill 76, effective September 28, 2010, to restore the two-for-four conduct credit calculation less favorable to defendants that had been in effect prior to January 25, 2010 (Stats. 2010, ch. 426, § 2). This amendment applied to persons in local custody for crimes committed on or after September 28, 2010. (Former § 4019, subd. (g), as amended by Senate Bill 76.)

And then, as part of the Realignment Act, the Legislature amended section 4019 a third time in Assembly Bill 109 (2011-2012 Reg. Sess.; Assembly Bill 109). Assembly Bill No. 109, which amended section 4019 effective July 1, 2011, authorized conduct credit for all local prisoners at the rate of two days for every two days spent in local presentence custody. (§ 4019, subds. (b) & (c), as amended by Stats. 2011, ch. 15, § 482.) Like the previous amendment to section 4019, the amendment in Assembly Bill 109 was to have prospective application only. (*Ibid.*) But before July 1, 2011—the operative date of Assembly Bill No. 109—Governor Brown signed Assembly Bill No. 117 (2011-2012 Reg. Sess.), which retained the enhanced conduct credit formula but changed the effective date to October 1, 2011. (Former § 4019, subd. (h), as amended by Stats. 2011-2012, ch. 39, § 53.) On September 20, 2011, Governor Brown signed Assembly Bill No. 1X 17 (2011-2012 1st Ex. Sess.). This bill enacted the current version of section 4019 which retains the enhanced conduct credit provision—four days is deemed to have been served for every two days spent in actual custody. (Stats. 2011, 1st

Ex. Sess. 2011-2012, ch. 12, § 35; § 4019, subd. (f).) The statute expressly states that it is to apply prospectively. (§ 4019, subd. (h).)[4]

### D. *Statutory Construction Claim*

Defendant claims that as a matter of statutory interpretation, he is entitled to the benefit of one-for-one conduct credits under the October 2011 amendment to section 4019 for all days spent in custody after October 1, 2011. He claims that an ambiguity in subdivision (h) of section 4019 compels this conclusion. While he acknowledges that the first sentence of subdivision (h) indicates that section 4019 applies to prisoners who committed crimes on or after October 1, 2011, he asserts that the second sentence—"Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law" (§ 4019, subd. (h))—contains language favoring his position. He argues that this language creates an ambiguity requiring the construction that "the liberalized scheme of the new statute applies both to prisoners confined for crimes committed after October 1, 2011[,] and to prisoners confined after that date for earlier crimes." He asserts that both sentences of subdivision (h) of section 4019 should be harmonized by construing the statute as giving the benefit of the two-for-two credit scheme to persons such as himself who were incarcerated on or after October 1, 2011, for crimes committed prior to that date.

We rejected this argument in *Kennedy*, *supra*, 209 Cal.App.4th at pages 399 to 400. "We reiterate that according to the explicit language of the statute, the [October] 2011 amendment to Penal Code section 4019 applies only to crimes that were 'committed on or after October 1, 2011.' (Pen.Code, § 4019, subd. (h).)" (*Id.* at p. 399.) Similarly,

---

[4] "The changes to this section enacted by the act that added this subdivision shall apply prospectively and shall apply to prisoners who are confined to a county jail, city jail, industrial farm, or road camp for a crime committed on or after October 1, 2011. Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law." (§ 4019, subd. (h).)

the court in *People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 51 (*Rajanayagam*) rejected an argument that the second sentence of section 4019, subdivision (h), "implies any days earned by a defendant after October 1, 2011, shall be calculated at the rate required by the current law, regardless of when the offense was committed." It concluded that such an interpretation would render meaningless the language in the first sentence (*ibid.*), which provides that the changes to the accrual of presentence conduct credit "shall apply prospectively and shall apply to prisoners who are confined to a county jail . . . for a crime committed on or after October 1, 2011." (§ 4019, subd. (h).) The court in *Rajanayagam* concluded that adopting the defendant's interpretation would violate an elementary rule requiring courts, if possible, to ascribe meaning to every word, phrase, and sentence of a statute and to avoid interpretations that render some words superfluous. (*Rajanayagam*, at p. 51.)

We too conclude that defendant is not entitled to the more favorable calculation of presentence conduct credits provided in the October 2011 amendment for the time that he was in custody after October 1, 2011. (Accord, *People v. Ellis* (2012) 207 Cal.App.4th 1546, 1552-1553.)

### E. *Equal Protection Challenge*

Defendant contends that the failure to give retroactive application to the October 2011 amendment constitutes a violation of the equal protection clauses of the federal and state Constitutions (U.S. Const., 6th Amend.; Cal. Const., Art. I, § 7). He claims that he, as a defendant who committed crimes before October 1, 2011, but who was incarcerated after that date, is similarly situated to an inmate who is in custody for committing a crime after October 1, 2011, and that there is no rational basis to justify the alleged disparate treatment between these two groups. Therefore, he argues, in order to avoid a violation of equal protection, the October 2011 amendment should be given retroactive application in his case.

9

The first prerequisite for a successful equal protection argument is " 'a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.' [Citations.]" (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1199 (*Hofsheier*), quoting *In re Eric J.* (1979) 25 Cal.3d 522, 530.) This inquiry by the court "is not whether persons are similarly situated for all purposes, but 'whether they are similarly situated for purposes of the law challenged.' [Citation.]" (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.) The second requirement is that the challenger establish that there is no rational relationship to a legitimate state purpose for the state's having made a distinction between the two similarly situated groups. (*Hofsheier*, at pp. 1200-1201.)[5]

Last year, our Supreme Court decided in *People v. Brown* (2012) 54 Cal.4th 314 (*Brown*) that prospective application of the January 2010 amendment of section 4019 did not violate equal protection principles, concluding the amendment did not create two similarly situated groups. The Supreme Court noted that the "important correctional purposes of a statute authorizing incentives for good behavior [citation] are not served by rewarding prisoners who served time before the incentives took effect and thus could not have modified their behavior in response. That prisoners who served time before and after former section 4019 took effect are not similarly situated necessarily follows." (*Brown*, *supra*, 54 Cal.4th at pp. 328-329.)[6]

---

[5] Of course, there are three potential standards by which to measure the challenged classifications under an equal protection analysis—strict scrutiny, rational basis, and an intermediate level of review applicable to gender classifications. (*Hofsheier*, *supra*, 37 Cal.4th at p. 1200.) Legislation is usually subjected to a rational basis analysis which is the appropriate analysis here. (*Ibid.*)

[6] In rejecting the defendant's equal protection claim, the high court in *Brown* distinguished *In re Kapperman* (1974) 11 Cal.3d 542, 545 (*Kapperman*), a case upon which the defendant relied. In *Kapperman*, the court held that former section 2900.5, which awarded presentence custody credit only to individuals delivered to the Director of Corrections by the statute's effective date, bore no rational relationship to a legitimate

*(continued)*

10

In *Kennedy*, *supra*, 209 Cal.App.4th 385, we addressed the identical equal protection challenge to the October 2011 amendment to section 4019 raised by defendant here. While we acknowledged that *Brown*, *supra*, 54 Cal.4th 314, involved a prior amendment to section 4019 (*Kennedy*, at p. 396), we rejected the defendant's contention that he (Kennedy)—who committed his crime on March 11, 2011 (*id.* at p. 388)—was similarly situated with persons in jail who had committed crimes on or after the October 1, 2011 operative date of the challenged amendment : "[T]he reasoning of *Brown* applies with equal force to the prospective-only application of the current version of section 4019." (*Id.* at p. 397; but see *Rajanayagam*, *supra*, 211 Cal.App.4th at pp. 53-54 [distinguishing *Brown* by finding two groups were similarly situated with respect to equal protection challenge to October 2011 amendment]; *Verba*, *supra*, 210 Cal.App.4th at pp. 995-996 [same].)[7]

Furthermore, the California Supreme Court, one month after deciding *Brown*, applied *Brown*'s analysis involving the January 2010 amendment to a defendant's argument that the October 2011 amendment should apply retroactively. Although addressed only in a footnote, the high court rejected the defendant's contention that the prospective application of the October 2011 amendment violated equal protection: "Today local prisoners may earn day-for-day credit without regard to their prior convictions. (See § 4019, subds. (b), (c) & (f), as amended by Stats. 2011, ch. 15, § 482.) This favorable change in the law does not benefit defendant because it expressly applies

government purpose. The *Brown* court held that *Kapperman* was inapposite because it concerned only presentence *custody* credits, a very different circumstance from *conduct* credits. (*Brown*, *supra*, 54 Cal.4th at p. 330.)

[7] Although the *Rajanayagam* and *Verba* courts found that the "similarly situated" prong had been met, the defendants' equal protection challenges in both cases nonetheless failed because the courts found that a rational basis existed for the October 2011 amendment's disparate treatment of the two groups. (*Rajanayagam*, *supra*, 211 Cal.App.4th at pp. 54-56; *Verba*, *supra*, 210 Cal.App.4th at pp. 996-997.)

11

only to prisoners who are confined to a local custodial facility '*for a crime committed on or after October 1, 2011.*' (§ 4019, subd. (h), italics added.)  [¶] Defendant argues the Legislature denied equal protection [citations] by making this change in the law expressly prospective.  We recently rejected a similar argument in *People v. Brown* (2012) 54 Cal.4th 314, 328-330.) . . . Accordingly, prisoners who serve their pretrial detention before such a law's effective date, and those who serve their detention thereafter, are not similarly situated with respect to the law's purpose.  (*Brown*, at pp. 328-329.)" (*Lara*, *supra*, 54 Cal.4th at p. 906, fn. 9.)  We thus reject defendant's equal protection challenge because he cannot establish that he was similarly situated with persons who commit crimes on or after October 1, 2011.

Even were we to conclude that defendant is similarly situated with persons in jail who had committed crimes on or after the October 1, 2011 operative date of the challenged amendment to section 4019, his equal protection challenge fails.  As noted, no equal protection violation will be found "if the challenged classification bears a rational relationship to a legitimate state purpose.  [Citation.]" (*Hofsheier*, 37 Cal.4th at p. 1200.)  The court's inquiry is completed "[w]here there are 'plausible reasons' for [the classification]." (*Id.* at p. 1201.)  As we held in *Kennedy, supra,* 209 Cal.App.4th at page 397, there is a plausible reason for the statutory classification challenged here.

As we explained in *Kennedy*:  "[O]ur Supreme Court has acknowledged [that] 'statutes lessening the punishment for a particular offense' may be made prospective only without offending equal protection principles. (*Kapperman*, *supra*, 11 Cal.3d. at p. 546.) . . . [¶] In *People v. Floyd* (2003) 31 Cal.4th 179 (*Floyd*), the defendant sought to invalidate a provision of Proposition 36 barring retroactive application of its provisions for diversion of nonviolent drug offenders. (*Id.* at pp. 183-184.)  The court reiterated that the Legislature may preserve the penalties for existing offenses while ameliorating punishment for future offenders in order to ' "assure that penal laws will maintain their desired deterrent effect by carrying out the original prescribed punishment as written." '

12

(*Id.* at p. 190.)  The statute before the court came within this rationale because it 'lessen[ed] punishment for particular offenses.' (*Ibid.*)  As the *Floyd* court noted, ' "[t]he 14th Amendment does not forbid statutes and statutory changes to have a beginning, and thus to discriminate between the rights of an earlier and later time." [Citation.]' (*Id.* at p. 191.)  [¶] 'The very purpose of conduct credits is to foster constructive behavior in prison by reducing punishment.' (*People v. Lara* (2012) 54 Cal.4th 896, 906.)  As our Supreme Court accepted in *Brown*, *supra*, 54 Cal.4th 314, 'to increase credits reduces punishment.' (*Id.* at p. 325, fn. 15.)  [¶] We gather that the rule acknowledged in *Kapperman* and *Floyd* is that a statute ameliorating punishment for particular offenses may be made prospective only without offending equal protection, because the Legislature will be supposed to have acted in order to optimize the deterrent effect of criminal penalties by deflecting any assumption by offenders that future acts of lenity will necessarily benefit them.  [¶] . . . [¶] Although the statute at issue here does not ameliorate punishment for a particular offense, it does, in effect, ameliorate punishment for all offenses committed after a particular date.  By parity of reasoning to the rule acknowledged by both the *Kapperman* and *Floyd* courts, the Legislature could rationally have believed that by making the 2011 amendment to section 4019 have application determined by the date of the offense, they were preserving the deterrent effect of the criminal law as to those crimes committed before that date. . . .  We see nothing irrational or implausible in a legislative conclusion that individuals should be punished in accordance with the sanctions and given the rewards (conduct credits) in effect at the time an offense was committed." (*Kennedy, supra,* 209 Cal.App.4th at pp. 398-399, fn. omitted.)

Therefore, even had defendant satisfied the "similarly situated" requirement for an equal protection claim, his challenge to the October 2011 amendment nonetheless fails because the classification between persons—those committing an offense prior to October 1, 2011, and those committing an offense on or after that date—bears a rational

13

relationship to a legitimate state purpose. (*Kennedy, supra,* 209 Cal.App.4th at pp. 397-399; accord, *Rajanayagam, supra,* 211 Cal.App.4th at pp. 54-56; *Verba, supra,* 210 Cal.App.4th at pp. 996-997.)[8]

E.     *Calculation of Presentence Credits*

Defendant argues that, even if we reject his claim that the October 2011 amendment to section 4019 applies to his circumstances, the trial court erred in calculating his presentence credits. He argues that he should have received 63 days of custody credits and 30 days of conduct credit, rather than the 61 days and 21 days, respectively, awarded by the trial court. The Attorney General concedes that the trial court erred.

Defendant is entitled to custody credits based upon the number of days he was in custody, calculated from the date he entered custody to the date of sentencing, inclusive. (*People v. Smith* (1989) 211 Cal.App.3d 523, 525-526.) Defendant here was remanded to custody on October 13, 2011, the date the jury returned guilty verdicts as to both counts alleged in the information. He was sentenced on December 14, 2011 and is entitled to 63 days of presentence custody credits. Applying the conduct credit formula under section 4019 in effect at the time defendant committed his crimes, he is entitled to six days of credit for every four days served in custody. (Former § 4019, subd. (f), stats. 1982, ch. 1234, § 7, p. 4553.) The formula used to determine such conduct credits is to divide the number of custody credits by four, round the number down to the nearest whole number,

_____

[8] We note that there are two cases, now depublished, addressing the question of retroactivity of the October 2011 amendment to section 4019 that were pending before the Supreme Court when this case was being briefed. In those cases, the high court granted review, issued orders deferring briefing pending the finality of its decision in *Brown, supra,* 54 Cal.4th 314, and thereafter dismissed review. (See *People v. Olague* (2012) 205 Cal.App.4th 1126, review granted Aug. 8, 2012, S203298, review dismissed Mar. 20, 2013; *People v. Borg* (2012) 204 Cal.App.4th 1528, review granted Jul. 18, 2012, S202328, review dismissed Mar. 20, 2013.)

14

and then multiply that number by two. (*People v. Philpot* (2004) 122 Cal.App.4th 893, 908.) Defendant is entitled to 30 days of conduct credit. Accordingly, we will order the judgment modified to reflect the correct number of custody and conduct credits.

DISPOSITION

The judgment is modified to reflect that defendant shall receive 63 days of custody credits and 30 days of conduct credits for a total or 93 days of presentence credits. The clerk of the superior court is directed to prepare an amended abstract of judgment to reflect this modification and to transmit a certified copy of the amended abstract to the Department of Corrections and Rehabilitation. As so modified, the judgment is affirmed.

_____

Márquez, J.

WE CONCUR:

_____

Elia, Acting P.J.

_____

Bamattre-Manoukian, J.

15